*Exhibit A*

| CIVIL ACTION COVER SHEET | Trial Court of Massachusetts<br>SUPERIOR COURT DEPARTMENT<br>County: Hampshire | Docket Number:<br>15CV244 |
|---|---|---|

| PLAINTIFF(S)<br>Dimaris Barrios-Beltran | DEFENDANT(S):<br>Amherst College and Victoria Maillo |
|---|---|
| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE<br>Sarah A. Ornelas<br>O'Connell & Plumb, P.C.<br>75 Market Place<br>Springfield, MA 01103<br>(413) 733-9111 | ATTORNEY (if known) |

**Origin Code and track designation**

Place an x in one box only:
- xx  1. F01 Original Complaint
- ☐  2. F02 Removal to Sup.Ct.C.231,s.104 (Before trial) (F)
- ☐  3. F03 Retransfer to Sup.Ct.C 231,s.102C(X)
- ☐  4. F04 District Court Appeal c.231,s.97 & 104 (After trial) (X)
- ☐  5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- ☐  6. E10 Summary Process Appeal (X)

**TYPE OF ACTION AND TRACK DESIGNATION** (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| B22 | Employment Discrimination | F | (X) Yes   ( ) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**
(Attach additional sheets as necessary)

A.  Documented medical expenses to date:
   1. Total hospital expenses: ................................................$..................
   2. Total Doctor expenses: ..................................................$..................
   3. Total chiropractic expenses: ..........................................$..................
   4. Total physical therapy expenses: ...................................$..................
   5. Total other expenses (Describe):....................................$..................
      SUBTOTAL: $..................
B.  Documented lost wages and compensation to date: ..............$..................
C.  Documented property damages to date: ...............................$..................
D.  Reasonably anticipated future medical and hospital expenses: ...$..................
E.  Reasonably anticipated lost wages: ......................................$..................
F.  Other documented items of damage (Describe): Plaintiff's damages are in excess of the $25,000 jurisdictional limitation
G.  Brief description of Plaintiff's injury, including nature and extent of injury (Describe): in excess of $25,000.00
The Plaintiff was discriminated and retaliated against by her prior employer and supervisor in violation of M.G.L. c. 151B and Title VII.

DEC 10 2015

**CONTRACT CLAIMS**

Provide a detailed description of claim(s):

TOTAL:

PLEASE IDENTIFY, BY CASE NUMBER AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my client with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____  DATE: December 9, 2015

COMMONWEALTH OF MASSACHUSETTS

Hampshire, ss.                          Superior Court Department
                                           Civil Action No.

DIMARIS BARRIOS-BELTRAN,
       Plaintiff

v.

AMHERST COLLEGE and
VICTORIA MAILLO,
       Defendants

HAMPSHIRE SUPERIOR COURT

DEC 10 2015

## COMPLAINT AND JURY DEMAND

### Parties

1. The Plaintiff, Dimaris Barrios-Beltran is an individual who lives in Amherst, Massachusetts.

2. The Defendant Amherst College ("Defendant Amherst College") is a college located in Amherst, Massachusetts.

3. The Defendant Victoria Maillo ("Defendant Maillo") is an individual who was employed by the Defendant Amherst College and can be contacted by and through her attorney at Eckert Seamans Cherin & Mellott, LLC, Two International Place, 16th Floor, Boston, MA 02110.

### Facts

4. On or around April 12, 2012, the Plaintiff was hired by Defendant Amherst College to serve as a lecturer for the Spanish Department starting in the Fall 2012 semester. Throughout her employment with the Defendant Amherst College, the Plaintiff performed all of her job responsibilities well and was routinely praised for her skills in

1

the classroom. For example, her work ethic was described in one review as an "engaging, experienced teacher of Spanish language cultures and their larger contexts."

5. Early on during the Plaintiff's employment, the Plaintiff's supervisor Defendant Maillo informed the Plaintiff that when she was looking for new Teacher's Assistants (T.A.) to hire she liked to look them up online and pick "pretty faces" to help attract more people to take Spanish classes.

6. Shortly after the Plaintiff began her employment she noticed that Defendant Maillo would say inappropriate comments about students. For example, she called one student *La Momia* (the mummy) because the student suffered from severe depression and contemplated suicide. The Plaintiff objected to Defendant Maillo's use of this term. It was obvious to the Plaintiff that Defendant Maillo did not like the Plaintiff standing up to her.

7. Defendant Maillo was also very dismissive of the Plaintiff's knowledge of the Spanish language and the Plaintiff's dialect because the Plaintiff is from Puerto Rico and not Spain. Defendant Maillo felt that people from Spain were superior to those from Puerto Rico.

8. Shortly after the Plaintiff began working for Defendant Amherst College, the Plaintiff started a workplace diary after she realized the very conflictive and hostile work environment in the Spanish Department. The Plaintiff thought that it might help her sort through her thoughts and give her an outlet to express her feelings.

9. During the early part of the Spring 2013 semester, the Plaintiff's Teacher's Assistant ("T.A.") called the Plaintiff crying. She told the Plaintiff that she felt that Defendant Maillo was treating her like a "prostitute." The T.A. told the Plaintiff that Defendant

Maillo encouraged her and the other T.A's to go out to parties or socials and sleep with students to encourage more people to take Spanish. Defendant Maillo was also mad at the T.A. for dating a man at UMass (opposed to dating a Defendant Amherst College student) and was upset at the T.A. for not going to the parties at Amherst College. This T.A. further explained to the Plaintiff that in frustration she had asked Defendant Maillo if she wanted her to sleep with a different guy every night like another T.A. was doing, and Defendant Maillo responded "that is what I brought you here for." The T.A. was scared about reporting what was happening and didn't want her parents to know what was happening to her.

10. After the Plaintiff spoke with this T.A. she spoke with the other T.A.s who confirmed the information that the Plaintiff had just learned. These young T.A.s believed that they were being asked to prostitute themselves to increase enrollment in the Spanish Department.

11. The next day, the Plaintiff saw Ute Brandes (the Chair of the Spanish Department). Ms. Brandes is the Plaintiff's supervisor and she further oversees Defendant Maillo as well. The Plaintiff asked Ms. Brandes to speak and they scheduled a time to speak. The Plaintiff met with Ms. Brandes on February 15, 2013 and told her about the situation with the T.A. and the other T.A.s. Ms. Brandes said that she would speak with Defendant Maillo. Immediately thereafter Defendant Maillo became even aggressive, hostile and retaliatory towards the Plaintiff.

12. The Plaintiff continuously complained to Ms. Brandes about Defendant Maillo's conduct, but nothing was done to change the hostile environment in the Spanish Department. The Plaintiff complained to Ute Brandes for various things such as: (1)

3

Defendant Maillo encouraging the T.As to sleep with students (2) Defendant Maillo encouraging overly sexual banter and conversations in the Spanish Department (3) Defendant Maillo choosing radio program topics for the Spanish Department that were sexual (i.e. how watching pornography would help you in your sexual life) (4) Defendant Maillo trying to set up T.A.s with students (5) the overall hostile treatment that the Plaitniff was receiving from Defendant Maillo after she first complained about the sexual harassment of the T.A.s and (6) the ways that Defendant Maillo was sabotaging the Plaintiff's work and classes after the Plaintiff complained about the sexual harassment.

13. Defendant Maillo also made inappropriate comments about people with disabilities, Jewish people and people from Puerto Rico.

14. Some examples of the hostile work environment that the Plaintiff experienced after complaining of sexual harassment, include but are not limited to Defendant Maillo engaging in the following:

   a. Trying to convince other faculty members that the Plaintiff did not have control over her students;
   b. Complaining that due to the Plaintiff's age, she was not the type of professor that students wanted in their classroom;
   c. Ignoring the Plaintiff and not responding to her greetings;
   d. Not valuing the Plaintiff's opinion and stating the Plaintiff's Spanish dialect was not academic;
   e. She called the Plaintiff, her class and students ghetto;
   f. Telling students that the Plaintiff's Spanish Heritage class was a "waste of time;"

    g. Telling T.A.s that the Plaintiff was a dangerous person and shouldn't be trusted;

    h. Not allowing the Plaintiff to attend orientation events with new students;

    i. Not allowing the Plaintiff to interview students for the Plaintiff's Heritage Speakers class;

    j. Not telling the Plaintiff about important and/or special events;

    k. There are other examples as well.

15. During the Fall 2013 semester there was a confusion as to the renewability of the Plaintiff's contract with Amherst College. On October 24, 2013, the Plaintiff met with the Director of Human Resources to discuss this issue. When the Plaintiff was meeting with the Director of Human Resources she also explained the situation with Defendant Maillo and how she had been retaliated against after raising issues of the sexual harassment of the T.A.'s. The Plaintiff explained that she had been keeping a journal and the Director of Human Resources suggested that she continued to write in her journal.

16. At the beginning of the 2014-2015 academic year the Plaintiff again made another complaint to Ms. Brandes. Ms. Brandes told the Plaintiff that nothing could be done and that the Plaintiff needed to concentrate on her reappointment and everything needed to "look perfect" for the Plaintiff's reappointment as the Plaintiff's contract term was coming to an end.

17. On February 10, 2015, the Plaintiff met with Ms. Brandes. She provided the Plaintiff with a copy of a letter of recommendation for reappointment. Very positive remarks were made about the Plaintiff's teaching, except the comments that came from the Defendant Maillo, and the Plaintiff was recommended for reappointment. During that

meeting, the Plaintiff again brought up the issue of Defendant Maillo's harassment and the Plaintiff requested a mediator to help work out the situation. Ms. Brandes told the Plaintiff that there was no money for a mediator, and that the Plaintiff didn't want to "make waves" during the reappointment process.

18. On March 3, 2015, the Spanish Department was given an orientation on Title IX by Laurie Frankl (the Title IX coordinator for the college) based on a claim of discrimination brought by a Jewish student. After this presentation, the Plaintiff decided to share her complaints with Ms. Frankl.

19. On March 4, 2015, the Plaintiff was informed that she was not reappointed.

20. Also, on March 4, 2015, the Plaintiff sent an email to Ms. Frankl to request a meeting to discuss several issues that the Plaintiff had experienced in the work place, including issues with sexual harassment, bullying and discrimination.

21. On March 5, 2015, the Plaintiff met with Ms. Frankl and told her everything that the Plaintiff had been experiencing and the Plaintiff had witnessed. The Plaintiff informed her that the Plaintiff had been keeping a workplace diary as a way to help her cope with everything. The Plaintiff agreed to provide a copy of this private diary to Ms. Frankl so that she had all of the information.

22. On March 8, 2015, the Plaintiff sent her diary to Ms. Frankl via electronic mail. The workplace diary is a 31 page single spaced document.

23. On March 13, 2015, the Plaintiff met with Ms. Frankl in the morning, and then with Ms. Frankl and the Dean at approximately 2:00 pm. The Plaintiff again complained of the sexual harassment of the T.A.'s, hostile work environment and retaliation. The Plaintiff also informed them of all of her prior complaints.

24. On April 2, 2015, the Plaintiff met with the Dean and the director of Human Resources and again discussed the retaliation and discrimination.

25. On April 6, 2015, the Plaintiff provided further emails and documentation to Defendant Amherst College. The Plaintiff never heard back from anyone at Defendant Amherst College regarding her complaints.

26. Despite the Plaintiff's ongoing complaints throughout her employment at Defendant Amherst College, nothing was done to stop the hostile work environment and prevent Defendant Maillo's retaliation against the Plaintiff. Defendant Maillo's actions reduced the number of student's in the Plaintiff's classes and lack of enrollment was the reason given for her non-reappointment.

27. The Plaintiff has suffered extensive emotional distress as a result of the treatment that she experienced during her employment and as a result of her termination. The Plaintiff has suffered a great deal of stress as a result of the events set forth herein, and it has affected all aspects of her life. The Plaintiff required professional assistance to help her cope with the emotional distress that she experienced as a result of the Defendants' conduct. The Plaintiff continues to suffer from emotional distress as a result of the actions of the Defendants.

28. Up until and including her last day of work, the Plaintiff continued to feel discriminated against, retaliated against and fearful that further retaliation would occur towards her.

29. The incidents described herein are not an exhaustive list of the discrimination, harassment and retaliation that the Plaintiff experienced while working for the Defendant Amherst College.

30. As a result of the Plaintiff's wrongful termination, the Plaintiff has suffered damages, including lost wages, emotional distress, attorneys' fees, costs and other consequential damages.

31. The Plaintiff has satisfied the prerequisites for filing suit by first filing her claims with the Massachusetts Commission Against Discrimination and the Equal Employment Opportunities Commission.

### COUNT I
**M.G.L. c. 151B – Retaliation / Wrongful Termination**
**Plaintiff v. Defendant Amherst College and Defendant Victoria Maillo**

32. The Plaintiff incorporates herein the previous allegations set forth in the Complaint, above.

33. As more fully set forth above, the terms and conditions of the Plaintiff's employment were adversely affected by her reporting and objecting to the sexual harassment of the T.A. students.

34. The environment and conditions imposed upon the Plaintiff related to and adversely affected the terms and conditions of her employment, including but not limited to causing her to be terminated from her employment.

35. The Plaintiff was severely and adversely affected by the conduct of the Defendants and the failure of the Defendants to take reasonable steps to ensure that this discrimination and retaliation did not occur.

WHEREFORE, the Plaintiff, Dimaris Barrios Beltran, requests that judgment enter against the Defendant Amherst College and Victoria Maillo for all damages available pursuant to

M.G.L. c. 151B, including lost wages, attorneys' fees, emotional distress, consequential damages and attorneys' fees.

## COUNT II
### M.G.L. c. 151B – National Origin Discrimination
### Plaintiff v. Defendant Amherst College and Defendant Victoria Maillo

36. The Plaintiff incorporates herein the previous allegations set forth in the Complaint, above.

37. As more fully set forth above, the Plaintiff was discriminated against based on her national origin (Puerto Rican) by her supervisor, Defendant Maillo. The Defendant Amherst College is individually and vicariously liable for the illegal actions of its supervisor.

38. The environment and conditions imposed upon the Plaintiff related to and adversely affected the terms and conditions of her employment, and further caused the Plaintiff emotional distress.

39. The Plaintiff was severely and adversely affected by the conduct of the Defendants and the failure of the Defendants to take reasonable steps to ensure that this discrimination and retaliation did not occur.

WHEREFORE, the Plaintiff, Dimaris Barrios Beltran, requests that judgment enter against the Defendants Amherst College and Victoria Maillo for all damages available pursuant to M.G.L. c. 151B, including lost wages, attorneys' fees, emotional distress, consequential damages and attorneys' fees.

## COUNT III
### TITLE VII – Retaliation
### Plaintiff v. Defendant Amherst College and Defendant Victoria Maillo

40. The Plaintiff incorporated herein the previous allegations set forth in the Complaint.

41. The Plaintiff was treated differently as to the terms and conditions of her employment based upon her reporting and resisting the sexual harassment of the T.A.s by the Defendants, and she was further retaliated against and discriminated against despite her complaints to her supervisors and human resources.

42. The Plaintiff believes that she was retaliated against (as more fully set forth above) and her employment was terminated with the Defendant Amherst College, at least in part, based on the impact of the retaliatory conduct by Defendant Maillo.

43. The environment and the conditions imposed upon the Plaintiff related to and adversely affected the terms and conditions of her employment.

44. The Plaintiff was severely and adversely affected by the Defendants' conduct and the failure of the Defendants to take reasonable steps to ensure that this discriminatory conduct and discrimination would not continue.

WHEREFORE, the Plaintiff, Dimaris Barrios-Beltran, requests that judgment enter against the Defendants Amherst College and Victoria Maillo for all damages available pursuant to Title VII of the Civil Rights of 1964, as amended (herein "Title VII"), including lost wages, attorneys' fees, emotional distress, consequential damages and attorneys' fees.

### COUNT IV
### TITLE VII – National Origin Discrimination
### Plaintiff v. Defendant Amherst College and Defendant Victoria Maillo

45. The Plaintiff incorporates herein the previous allegations set forth in the Complaint, above.

46. As more fully set forth above, the Plaintiff was discriminated against based on her national origin (Puerto Rican) by her supervisor, Defendant Maillo. The Defendant Amherst College is individually and vicariously liable for the illegal actions of its supervisor.

47. The environment and conditions imposed upon the Plaintiff related to and adversely affected the terms and conditions of her employment, and further caused the Plaintiff emotional distress.

48. The Plaintiff was severely and adversely affected by the conduct of the Defendants and the failure of the Defendants to take reasonable steps to ensure that this discrimination and retaliation did not occur.

WHEREFORE, the Plaintiff, Dimaris Barrios-Beltran, requests that judgment enter against the Defendants Amherst College and Victoria Maillo for all damages available pursuant to Title VII of the Civil Rights of 1964, as amended (herein "Title VII"), including lost wages, emotional distress, consequential damages and attorneys' fees.

### COUNT V
### Intentional Infliction of Emotional Distress
### Plaintiff v. Defendant Victoria Maillo

49. The Plaintiff incorporates herein the previous allegations set forth in this Complaint.

50. The actions of Defendant Maillo, some of which are more fully set forth above, were intentional.

51. Defendant Maillo intended to inflict emotional distress upon the Plaintiff and/or should have known that emotional distress was a likely result of her conduct.

52. The conduct of Defendant Maillo was so extreme and outrageous that the Plaintiff suffered from (and continues to suffer from) emotional distress and required formal treatment for her distress.

53. As a result of Defendant Maillo's actions, the Plaintiff suffered damages, including emotional distress, for which Defendant Maillo is liable.

WHEREFORE, the Plaintiff, Dimaris Barrios-Beltran, respectfully requests a judgment against Defendant Victoria Maillo for all damages available under the law, including damages for her emotional distress.

*THE PLAINTIFF DEMANDS A JURY TRIAL ON ALL CLAIMS SO TRIABLE.*

Dated: December 9, 2015

The Plaintiff,
By her Attorneys,

Daniel J. O'Connell (550633)
Sarah A. Ornelas (670387)
O'Connell & Plumb, P.C.
75 Market Place
Springfield, Massachusetts 01103
(413) 733-9111(f) (413) 733-9888