UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIMARIS BARRIOS-BELTRAN,<br>　　　　　Plaintiff<br>v.<br><br>AMHERST COLLEGE and<br>VICTORIA MAILLO,<br>　　　　　Defendants | CIVIL ACTION NO.: 3:16-cv-10016 |

**PLAINTIFF'S FIRST AMENDED COMPLAINT AS A MATTER OF COURSE
AND JURY DEMAND**

**Parties**

1. The Plaintiff, Dimaris Barrios-Beltran is an individual who lives in Amherst, Massachusetts.

2. The Defendant Amherst College ("Defendant Amherst College") is a college located in Amherst, Massachusetts.

3. The Defendant Victoria Maillo ("Defendant Maillo") is an individual who was employed by the Defendant Amherst College and can be contacted by and through her attorney at Eckert Seamans Cherin & Mellott, LLC, Two International Place, 16th Floor, Boston, MA 02110.

**Facts**

4. On or around April 12, 2012, the Plaintiff was hired by Defendant Amherst College to serve as a lecturer for the Spanish Department starting in the Fall 2012 semester. Throughout her employment with the Defendant Amherst College, the Plaintiff performed all of her job responsibilities well and was routinely praised for her skills in

1

the classroom. For example, her work ethic was described in one review as an "engaging, experienced teacher of Spanish language cultures and their larger contexts."

5. Early on during the Plaintiff's employment, the Plaintiff's supervisor Defendant Maillo informed the Plaintiff that when she was looking for new Teacher's Assistants (T.A.) to hire she liked to look them up online and pick "pretty faces" to help attract more people to take Spanish classes.

6. Shortly after the Plaintiff began her employment she noticed that Defendant Maillo would say inappropriate comments about students. For example, she called one student *La Momia* (the mummy) because the student suffered from severe depression and contemplated suicide. The Plaintiff objected to Defendant Maillo's use of this term. It was obvious to the Plaintiff that Defendant Maillo did not like the Plaintiff standing up to her.

7. Defendant Maillo was also very dismissive of the Plaintiff's knowledge of the Spanish language and the Plaintiff's dialect because the Plaintiff is from Puerto Rico and not Spain. Defendant Maillo felt that people from Spain were superior to those from Puerto Rico. Defendant Maillo was rude and dismissive to Puerto Rican decedents (including the Plaintiff) throughout the Plaintiff's employment with Defendant Amherst College, up to and including the Spring 2015 academic semester.

8. Shortly after the Plaintiff began working for Defendant Amherst College, the Plaintiff started a workplace diary after she realized there was a very conflictive and hostile work environment in the Spanish Department. The Plaintiff thought that it might help her sort through her thoughts and give her an outlet to express her feelings.

9. During the early part of the Spring 2013 semester, the Plaintiff's Teacher's Assistant ("T.A.") called the Plaintiff crying. She told the Plaintiff that she felt that Defendant Maillo was treating her like a "prostitute." The T.A. told the Plaintiff that Defendant Maillo encouraged her and the other T.A's to go out to parties or socials and sleep with students to encourage more people to take Spanish. Defendant Maillo was also mad at the T.A. for dating a man at UMass (opposed to dating a Defendant Amherst College student) and was upset at the T.A. for not going to the parties at Amherst College. This T.A. further explained to the Plaintiff that in frustration she had asked Defendant Maillo if she wanted her to sleep with a different guy every night like another T.A. was doing, and Defendant Maillo responded "that is what I brought you here for." The T.A. was scared about reporting what was happening and didn't want her parents to know what was happening to her.

10. After the Plaintiff spoke with this T.A. she spoke with the other T.A.s who confirmed the information that the Plaintiff had just learned. These young T.A.s believed that they were being asked to prostitute themselves to increase enrollment in the Spanish Department.

11. The next day, the Plaintiff saw Ute Brandes (the Chair of the Spanish Department). Ms. Brandes is the Plaintiff's supervisor and she further oversees Defendant Maillo as well. The Plaintiff asked Ms. Brandes to speak and they scheduled a time to speak. The Plaintiff met with Ms. Brandes on February 15, 2013 and told her about the situation with the T.A. and the other T.A.s. Ms. Brandes said that she would speak with Defendant Maillo. Immediately thereafter Defendant Maillo became even more aggressive, hostile and began to retaliate against the Plaintiff.

12. The Plaintiff continuously complained to Ms. Brandes about Defendant Maillo's conduct, but nothing was done to change the hostile environment in the Spanish Department. The Plaintiff complained to Ute Brandes for various things such as: (1) Defendant Maillo encouraging the T.As to sleep with students (2) Defendant Maillo encouraging overly sexual banter and conversations in the Spanish Department (3) Defendant Maillo choosing radio program topics for the Spanish Department that were sexual (i.e. how watching pornography would help you in your sexual life) (4) Defendant Maillo trying to set up T.A.s with students (5) the overall hostile treatment that the Plaitniff was receiving from Defendant Maillo after she first complained about the sexual harassment of the T.A.s and (6) the ways that Defendant Maillo was sabotaging the Plaintiff's work and classes after the Plaintiff complained about the sexual harassment.

13. Defendant Maillo also made inappropriate comments about people with disabilities, Jewish people and people from Puerto Rico at various times throughout the Plaintiff's employment with Defendant Amherst College.

14. Some examples of the hostile work environment that the Plaintiff experienced after complaining of sexual harassment, include but are not limited to Defendant Maillo engaging in the following:

    a. Trying to convince other faculty members that the Plaintiff did not have control over her students;

    b. Trying to encourage students not to take the Plaintiff's classes;

    c. Complaining that due to the Plaintiff's age, she was not the type of professor that students wanted in their classroom;

    d. Ignoring the Plaintiff and not responding to her greetings and at times ignoring her emails. One example of this was during a December 10, 2014 pizza party wherein Defendant Maillo completely ignored the Plaintiff;

    e. Not valuing the Plaintiff's opinion and stating the Plaintiff's Spanish dialect was not academic;

    f. Telling students that the Plaintiff's Spanish Heritage class was a "waste of time;"

    g. Telling T.A.s that the Plaintiff was a dangerous person and shouldn't be trusted;

    h. Not allowing the Plaintiff to attend orientation events with new students;

    i. Not allowing the Plaintiff to interview students for the Plaintiff's Heritage Speakers class;

    j. Not telling the Plaintiff about important and/or special events;

    k. There are other examples as well.

The actions of Defendant Maillo (as set forth above) occurred throughout the Plaintiff's employment with Defendant Amherst College, up to and including the Spring 2015 academic semester.

15. During the Fall 2013 semester there was a confusion as to the renewability of the Plaintiff's contract with Amherst College. On October 24, 2013, the Plaintiff met with the Director of Human Resources to discuss this issue. When the Plaintiff was meeting with the Director of Human Resources she also explained the situation with Defendant Maillo and how she had been retaliated against after raising issues of the sexual harassment of the T.A.'s. The Plaintiff explained that she had been keeping a journal and the Director of Human Resources suggested that she continue to write in her journal.

16. At the beginning of the 2014-2015 academic year the Plaintiff again made another complaint to Ms. Brandes. Ms. Brandes told the Plaintiff that nothing could be done and that the Plaintiff needed to concentrate on her reappointment and everything needed to "look perfect" for the Plaintiff's reappointment as the Plaintiff's contract term was coming to an end.

17. On December 18, 2014, the Plaintiff had a meeting with Defendant Maillo wherein Defendant Maillo wanted to discuss the Plaintiff's Spanish for Heritage Speakers class. Defendant Maillo told the Plaintiff that she was trying to fix the fact that they were "ghetto" (in reference to the Plaintiff and her students, most of whom were Puerto Rican).

18. On February 10, 2015, the Plaintiff met with Ms. Brandes. She provided the Plaintiff with a copy of a letter of recommendation for reappointment. Very positive remarks were made about the Plaintiff's teaching, except the comments that came from the Defendant Maillo, and the Plaintiff was recommended for reappointment. Upon information and belief, the negative comments made by Defendant Maillo were unfounded and a further attempt by Defendant Maillo to discriminate against and further retaliate against the Plaintiff. During that meeting, the Plaintiff again brought up the issue of Defendant Maillo's harassment and the Plaintiff requested a mediator to help work out the situation. Ms. Brandes told the Plaintiff that there was no money for a mediator, and that the Plaintiff didn't want to "make waves" during the reappointment process.

19. On March 3, 2015, the Spanish Department was given an orientation on Title IX by Laurie Frankl (the Title IX coordinator for the college) based on a claim of

discrimination brought by a Jewish student. After this presentation, the Plaintiff decided to share her complaints with Ms. Frankl.

20. On March 4, 2015, the Plaintiff was informed that she was not reappointed. The reason given for the Plaintiff's non-reappointment was a "lack of enrollment" in her Spanish classes. The Plaintiff's class enrollment numbers were directly interfered with by Defendant Maillo as she encouraged students not to take the Plaintiff's classes and made negative, derogatory comments regarding the Plaintiff's teaching ability. The Defendant Maillo consistently engaged in this behavior up to and including the Spring 2015 academic semester.

21. Also, on March 4, 2015, the Plaintiff sent an email to Ms. Frankl to request a meeting to discuss several issues that the Plaintiff had experienced in the work place, including issues with sexual harassment, bullying and discrimination.

22. On March 5, 2015, the Plaintiff met with Ms. Frankl and told her everything that the Plaintiff had been experiencing and the Plaintiff had witnessed. The Plaintiff informed her that the Plaintiff had been keeping a workplace diary as a way to help her cope with everything. The Plaintiff agreed to provide a copy of this private diary to Ms. Frankl so that she had all of the information.

23. On March 8, 2015, the Plaintiff sent her diary to Ms. Frankl via electronic mail. The workplace diary is a 31 page single spaced document.

24. On March 13, 2015, the Plaintiff met with Ms. Frankl in the morning, and then with Ms. Frankl and the Dean at approximately 2:00 pm. The Plaintiff again complained of the sexual harassment of the T.A.'s, hostile work environment and retaliation. The Plaintiff also informed them of all of her prior complaints.

25. On April 2, 2015, the Plaintiff met with the Dean and the Director of Human Resources and again discussed the retaliation and discrimination.

26. On April 6, 2015, the Plaintiff provided further emails and documentation to Defendant Amherst College. The Plaintiff never heard back from anyone at Defendant Amherst College regarding her complaints.

27. Despite the Plaintiff's ongoing complaints throughout her employment at Defendant Amherst College, nothing was done to stop the hostile work environment and prevent Defendant Maillo's retaliation against the Plaintiff. Defendant Maillo's actions reduced the number of student's in the Plaintiff's classes and lack of enrollment was the reason given for her non-reappointment.

28. The Plaintiff has suffered extensive emotional distress as a result of the treatment that she experienced during her employment and as a result of her termination. The Plaintiff has suffered a great deal of stress as a result of the events set forth herein, and it has affected all aspects of her life. The Plaintiff required professional assistance to help her cope with the emotional distress that she experienced as a result of the Defendants' conduct. The Plaintiff continues to suffer from emotional distress as a result of the actions of the Defendants.

29. Up until and including her last day of work, the Plaintiff continued to feel discriminated against, retaliated against and fearful that further retaliation would occur towards her by both of the Defendants. Up to and including the Spring 2015 academic semester Defendant Maillo continued to engage in hostile behaviors towards the Plaintiff (as more fully set forth above).

30. The Plaintiff's employment ended with the Defendant Amherst College in or around May 2015 which was the end of the Spring 2015 academic semester.

31. The incidents described herein are not an exhaustive list of the discrimination, harassment and retaliation that the Plaintiff experienced while working for the Defendant Amherst College and at the hands of the Defendant Maillo.

32. The Plaintiff's last day of employment with the Defendant Amherst College was at the end of the Spring 2015 semester which ended in or around May 2015.

33. As a result of the Plaintiff's wrongful termination, the Plaintiff has suffered damages, including lost wages, emotional distress, attorneys' fees, costs and other consequential damages.

34. The Plaintiff has satisfied the prerequisites for filing suit by first filing her claims with the Massachusetts Commission Against Discrimination and the Equal Employment Opportunities Commission.

**<u>COUNT I</u>**
**M.G.L. c. 151B – Retaliation / Wrongful Termination**
**Plaintiff v. Defendant Amherst College and Defendant Victoria Maillo**

35. The Plaintiff incorporates herein the previous allegations set forth in the Complaint, above.

36. As more fully set forth above, the terms and conditions of the Plaintiff's employment were adversely affected by her reporting and objecting to the sexual harassment of the T.A. students.

37. The environment and conditions imposed upon the Plaintiff related to and adversely affected the terms and conditions of her employment, including but not limited to causing

her to be subjected to ongoing retaliation throughout her employment, up to and including the Plaintiff not be reappointed.

38. The Plaintiff was severely and adversely affected by the conduct of the Defendants and the failure of the Defendants to take reasonable steps to ensure that this discrimination and retaliation did not occur.

WHEREFORE, the Plaintiff, Dimaris Barrios Beltran, requests that judgment enter against the Defendant Amherst College and Victoria Maillo for all damages available pursuant to M.G.L. c. 151B, including lost wages, emotional distress, consequential damages and attorneys' fees.

### COUNT II
### M.G.L. c. 151B – National Origin Discrimination
### Plaintiff v. Defendant Amherst College and Defendant Victoria Maillo

39. The Plaintiff incorporates herein the previous allegations set forth in the Complaint, above.

40. As more fully set forth above, the Plaintiff was discriminated against based on her national origin (Puerto Rican) by her supervisor, Defendant Maillo. The Defendant Amherst College is individually and vicariously liable for the illegal actions of its supervisor.

41. The environment and conditions imposed upon the Plaintiff related to and adversely affected the terms and conditions of her employment, created a hostile work environment and further caused the Plaintiff to suffer from emotional distress.

42. The Plaintiff was severely and adversely affected by the conduct of the Defendants and the failure of the Defendants to take reasonable steps to ensure that this discrimination and retaliation did not occur.

WHEREFORE, the Plaintiff, Dimaris Barrios Beltran, requests that judgment enter against the Defendants Amherst College and Victoria Maillo for all damages available pursuant to M.G.L. c. 151B, including lost wages, emotional distress, consequential damages and attorneys' fees.

## COUNT III
### TITLE VII – Retaliation
### Plaintiff v. Defendant Amherst College

43. The Plaintiff incorporated herein the previous allegations set forth in the Complaint.
44. The Plaintiff was treated differently as to the terms and conditions of her employment based upon her reporting and resisting the sexual harassment of the T.A.s by the Defendants, and she was further retaliated against and discriminated against despite her complaints to her supervisors and human resources.
45. The Plaintiff believes that she was retaliated against (as more fully set forth above) and her employment was terminated with the Defendant Amherst College, at least in part, based on the impact of the retaliatory conduct by Defendant Maillo.
46. The environment and the conditions imposed upon the Plaintiff related to and adversely affected the terms and conditions of her employment.
47. The Plaintiff was severely and adversely affected by the Defendant's conduct and the failure of the Defendant to take reasonable steps to ensure that this discriminatory conduct and discrimination would not continue.

WHEREFORE, the Plaintiff, Dimaris Barrios-Beltran, requests that judgment enter against the Defendant Amherst College for all damages available pursuant to Title VII of the Civil Rights act of 1964, as amended (herein "Title VII"), including lost wages, emotional distress, consequential damages and attorneys' fees.

### COUNT IV
**TITLE VII – National Origin Discrimination**
**Plaintiff v. Defendant Amherst College**

48. The Plaintiff incorporates herein the previous allegations set forth in the Complaint, above.

49. As more fully set forth above, the Plaintiff was discriminated against based on her national origin (Puerto Rican) by her supervisor, Defendant Maillo. The Defendant Amherst College is individually and vicariously liable for the illegal actions of its supervisor.

50. The environment and conditions imposed upon the Plaintiff related to and adversely affected the terms and conditions of her employment, and further caused the Plaintiff emotional distress.

51. The Plaintiff was severely and adversely affected by the conduct of the Defendant and the failure of the Defendant to take reasonable steps to ensure that this discrimination and retaliation did not occur.

WHEREFORE, the Plaintiff, Dimaris Barrios-Beltran, requests that judgment enter against the Defendant Amherst College for all damages available pursuant to Title VII of the

Civil Rights act of 1964, as amended (herein "Title VII"), including lost wages, emotional distress, consequential damages and attorneys' fees.

*THE PLAINTIFF DEMANDS A JURY TRIAL ON ALL CLAIMS SO TRIABLE.*

                                    The Plaintiff,
                                    By her Attorneys,

Dated: February 19, 2016

                                    /s/ *Daniel J. O'Connell*
                                    Daniel J. O'Connell (550633)
                                    Sarah A. Ornelas (670387)
                                    O'Connell & Plumb, P.C.
                                    75 Market Place
                                    Springfield, Massachusetts 01103
                                    (413) 733-9111(f) (413) 733-9888

**CERTIFICATE OF SERVICE**

     I, Daniel J. O'Connell, hereby certify that I have caused a copy of the forgoing to be served upon all parties of record via the electronic filing system.

                                    /s/ *Daniel J. O'Connell*